Kevin D. Callahan
Kevin D. Callahan Law LLC
11620 Our Road, Anchorage Alaska 99516
907-250-2505
kdcallahanlaw@protonmail.com
Attorney for Clifford F. Black

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA IN ANCHORAGE**

| | | |
|---|---|---|
| Clifford F. Black,<br>Plaintiff,<br><br>vs.<br><br>I Kill Fish LLC and<br>Trever James Flathman,<br><br>Defendants. | ) | Case No. 3:22-cv-00209-HRH<br>Jury Trial Demanded |

# COMPLAINT

## For Recovery Of Mortgage Deficiency, Breach Of Contract, Unjust Enrichment, Specific Performance, And Damages 46 U.S.C. 31325(b)(2)(B); 28 U.S.C. 1332(a)(1)

1. Comes now Plaintiff Clifford F. Black, by and through undersigned counsel, and hereby alleges and states as follows for this Complaint:

## SHORT STATEMENT OF JURISDICTION

2. This Court has original jurisdiction pursuant to 46 U.S.C. 31325(b)(2)(B) of the civil claim presented in Count 1 by Mr. Black, as Mortgagee on the preferred

mortgage for the vessel F/V Overkill, against Defendant I Kill Fish LLC as Mortgagor for default on the preferred mortgage and recovery of the outstanding indebtedness. Id. The Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(1) over the claims presented in Counts 2, 3, and 4 for breach of contract, unjust enrichment, and specific performance. On information and belief there is complete diversity between Mr. Black, a citizen of Alaska, and Defendants I Kill Fish LLC, a Nevada limited liability company, and Trever Flathman, who is understood to be a citizen of Florida. The amount in controversy is at minimum the mortgage deficiency of $96,408.88, exceeding the $75,000 statutory threshold, plus additional claims of damages and for unjust enrichment.

**PARTIES**

3. Mr. Black is a commercial fisherman and resident of Alaska. Mr. Black's address is 11620 Our Road, Anchorage Alaska 99516. Mr. Black is the Seller and Mortgagee of the preferred mortgage for the sale of the documented vessel F/V Overkill. The preferred mortgage was filed on November 14, 2018 with the United States Coast Guard National Vessel Documentation Center ("USCG NVDC") pursuant to the Commercial Instruments and Maritime Liens Act ("Ship Mortgage Act"), 46 U.S.C. § 31301 et seq., at §§ 31321.[1] See Ex.A, p. 4, USCG NVDC certified copy of

[1] "A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel... must be filed with the Secretary to be valid..." 46 U.S.C § 31321(a).

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

Abstract of Title; see Ex. B, ps. 2-15, USCG NVDC certified copy of preferred mortgage and Ex. B, ps.16-17, USCG NVDC certified copy of Bill Of Sale.

4 . Defendant I Kill Fish LLC ("the LLC") is the mortgagor of the preferred mortgage and buyer of the F/V Overkill as set forth in the combined preferred mortgage and sale agreement, entitled "Ships Mortgage, Promissory Note, Agreement to Purchase [etc]," ("Ships Mortgage Agreement" or "Agreement"). This Agreement also comprises the preferred mortgage as recorded for this sale by the USCG NVDC. See Ex. B, ps 2-15. I Kill Fish LLC is a limited liability company registered in the State of Nevada under Nevada Business ID NV20181362735 and Entity Number E0245362018-1. See Ex. C, p. 1, State of Nevada business public record.

5. Defendant Trever James Flathman, on information and belief, is a resident of the State of Florida. Mr. Flathman signed the Ships Mortgage Agreement on behalf of I Kill Fish LLC as authorized as its sole member. Ex. B, p. 7, Ships Id. at § 8.a,. Mr. Flathman is also listed as the Managing Member of I Kill Fish LLC in State of Nevada business public records. See Ex. C, p. 1. Mr. Flathman is listed as the owner of the F/V Overkill in 2020, 2021, and 2022 in State of Alaska Commercial Fisheries Entry Commission ("CFEC") public records. See Ex D, p.1. Mr. Flathman is further listed for each of those years and 2019 as the temporary holder of a permit for salmon drift gillnet fishing in Bristol Bay Alaska. See Ex. D, p. 2. His listed address in these public records is 2205 10th Street West, Palmetto, Florida 3422. See Ex.D ps. 1 and 2.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

## JURISDICTION

6. This case concerns a preferred mortgage lien on a documented vessel. "On default of any term of the preferred mortgage," a civil action in personam is authorized by 46 U.S.C. 31325(b)(2)(B)[2] under the original jurisdiction of this Court. 46 USC §31325(c).[3]

7. This Court also has diversity jurisdiction over individual defendants pursuant to 28 U.S.C. § 1332(a)(1) as set forth above. On information and belief there is complete diversity of citizenship between Plaintiff and Defendants.

8. Plaintiff Clifford F. Black is a citizen of Alaska. See Ex. B, p.4, Ships Mortgage Agreement at p.1, ¶1 "Parties," (providing Mr. Black's Alaska address)

9. Defendant I Kill Fish LLC, on information and belief, is a citizen of Nevada and is registered in Nevada as a Domestic Limited Liability Company, Nevada Business ID NV20181362735 and Entity Number E0245362018-1. See Exhibit C. 10. Mr.

---

[2] 46 U.S.C. § 31325(b)(2) B) provides in part as follows:

> (b) On default of any term of the preferred mortgage, the mortgagee may-
>
> (2) enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in-
>
> **(B)** a civil action against the mortgagor... for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness...

Id.

[3] "The district courts have original jurisdiction of a civil action brought under subsection (b)(1) or (2) of this section." Id.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

Flathman, upon information and belief, is a resident and citizen of Florida. This is shown by public record search results for Mr. Flathman of the Alaska Commercial Fisheries Entry Commission website which list his address as 2205 10th Street West, Palmetto, Florida 3422. See Ex D. On information and belief, these public records are based upon information submitted by Mr. Flathman himself in applications to the CFEC such as for a commericial fishing vessel license for the F/V Overkill and for temporary transfers to himself of Bristol Bay salmon drift gillnet net permits.

**PERSONAL JURISDICTION**

10. In federal actions the Ninth Circuit may apply a three-prong test to determine whether a court has specific personal jurisdiction over a nonresident defendant: (1) the defendant must purposefully direct their activities to the forum state, (2) the claim must be arising out of or related to these forum-related activities, and (3) the exercise of jurisdiction must be reasonable, i.e. comport with fair play and comports with fair play and substantial justice. See Schwarzenegger v. Fred Martin Motor Co substantial justice. See Schwarzenegger v. Fred Martin Motor Co.,374 F.3d 797, 799 (9th Cir. 2004). To the extent applicable here, this standard is met.

11. Personal jurisdiction over I Kill Fish LLC for purposes of actions under 46 U.S.C. § 31325(b)(2) (B) is appropriate first because the LLC agreed in the Ships Mortgage Agreement at §20, "Venue," that "Any legal action shall be filed and fully adjudicated in the State of Alaska." See Ex. B, p. 11. This mandatory language confirms I Kill Fish LLC's agreement to jurisdiction in Alaska over the LLC, or

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

otherwise waives or estops any objection to it. In addition, on information and belief, I Kill Fish LLC has also authorized operation of the F/V Overkill in 2019, and potentially other years, in the Bristol Bay, Alaska salmon fishery for the State of Alaska managed drift net salmon fishery. See Ex. D, p.1. CFEC public search records. Thus I Kill Fish LLC has purposefully directed its activities here. This claim further arises out of and is related to the LLC's failure to make any payment on the preferred mortgage while, on information and belief, the F/V Overkill was earning income in Alaska in that fishery. For the same reasons personal jurisdiction over I Kill Fish LLC comports with fair play and substantial justice and is also reasonable. See Schwarzenegger at p. 802, Note 12 supra.

12. “A federal court sitting in diversity applies state law and the Due Process Clause of the Fourteenth Amendment to determine whether personal jurisdiction exists." Johns v. Ill. Farmers Ins. Co., No. 21-35488, at *1 (9th Cir. Mar. 15, 2022) quoting Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1065. (9th Cir. 1990). The Alaska Supreme Court has construed the Alaska "longarm" jurisdictional statute, AS 09.05.015, to "authorize[] Alaska's courts ‘to assert jurisdiction to the maximum extent permitted by due process.’" Harper v. Biolife Energy Sys., Inc., 426 P.3d 1067, 1071-72 (Alaska 2018). This comprises a minimum contacts due process test. Id. For the factual reasons already stated above, and incorporated by reference here, this test is fully met for personal jurisdiction over individual Defendant I Kill Fish LLC under Alaska law. The contacts set forth

above are substantially beyond any minimum level necessary for fairness and due process.

13. Personal jurisdiction over Mr. Flathman is also appropriate because, on information and belief, Mr. Flathman has been the permit holder and the Captain of the F/V Overkill in the State of Alaska Bristol Bay salmon fishery in 2019, 2020, 2021, and 2022. See Ex. D, p.2 (showing Mr. Flathman each year as temporary transferee of a State of Alaska Bristol Bay salmon drift net limited entry permit.) Mr Flathman is further listed in CFEC public records as the owner of the F/V Overkill for the years 2020, 2021, and 2022. See Ex. D, p. 1. On information and belief, Mr. Flathman has derived personal income from this fishery using the F/V Overkill while his solely owned limited liability company I Kill Fish LLC, which he controls, has failed to make the payments on the preferred mortage for the vessel. Mr. Flathman has thus purposely directed his activities to this State, and these contacts are substantial, not minimal.

14. Plaintiff further asserts that I Kill Fish LLC should be treated as the mere instrumentality or alter ego of Mr. Flathman, and that its "corporate veil" should be pierced, and that the LLC and Mr. Flathman should be treated as interchangeable for purposes of jurisdiction, personal jurisdiction, and venue as well as liability. See Count II below.

**VENUE**

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

15. Venue is properly in the District of Alaska and before this Court in Anchorage[4] for the reasons which follow.

16. The Ships Mortgage Agreement at ¶ 20 provides: "20. VENUE. Any legal action shall be filed and fully adjudicated in the State of Alaska." Ex. B, p.11. This agreed upon provision should be given effect here. See Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 512 (9th Cir. 1988)[5]; see also ResQSoft, Inc. v. Protech Sols., 488 P.3d 979, 984 (Alaska 2021.[6]

17. Plaintiff is a citizen of the State of Alaska and Anchorage. Ex. B, p. 4.

18. The Ships Mortgage Agreement further provides at §19, "ALASKA LAW SHALL GOVERN" that "This Agreement shall be governed and construed pursuant to the laws of the state of Alaska." Ex. B, p. 11. This provision further supports venue in the District Court of Alaska as it is consistent with the venue agreement of the parties as well.

## CHOICE OF LAW

---

[4] See L.Civ.R. 3.2 "Venue," permitting initiation of an action at any of the five locations of the District Court in Alaska.

[5] The Court stated, "[F]orum selection clauses are to be specifically enforced unless the party opposing the clause clearly shows 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.' *The Bremen,* 407 U.S. at 15, 92, Sup. Ct. at 1916." Id.

[6] The Alaska Court stated, "We construe forum selection clauses broadly, releasing a party from a clause only when necessary to preserve justice or a compelling state interest." Id.

19. The Ships Mortgage Agreement choice of Alaska law just noted should be given effect. Id. It is well-established that in diversity cases, such as this one, "federal courts must apply the choice-of-law rules of the forum state." Rustico v. Intuitive Surgical, Inc., 993 F.3d 1085, 1091 (9th Cir. 2021)(citations omitted). Alaska courts in turn have generally given effect to contractual choice of law provisions unless the chosen state has no substtial relaitonship to the parties or is "contrary to a fundamental public policy of a state that has a materially greater interest in the issue and would otherwise provide the governing law." Peterson v. Ek, 93 P.3d 458, 465 n 11 (Alaska 2004) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).)

**STATEMENT OF THE CASE**

20. In November 2018 Mr. Black agreed to sell a United States Coast Guard ("USCG") documented 32' commercial fishing vessel, then known as the Guns-N-Roses, to I Kill Fish LLC, a limited liability company of which Mr. Flathman was the sole member and owner. The agreement followed discussions of a sale beginning in early August. Mr. Flathman signed the Ships Mortgage Agreement on behalf of I Kill Fish LLC on October 31, 2018, and Mr. Black signed on November 6, 2018. Ex. B, ps. 21 and 13.22.

21. The sale included 100% ownership of the vessel, see Ex. A, p. 4, at the time stored out of the water near Bellingham, Washington, and some associated

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

gear/equipment including nets, mostly stored in Naknek, Bristol Bay, Alaska. The sale price was $130,000. Id.

22. I Kill Fish LLC agreed in § 21 of the Agreement "that it had the opportunity to review the Agreement with legal counsel." Ex. B, p. 12. On information and belief, Mr. Flathman did in fact consult with counsel about the Agreement.

23. The second paragraph of the Ship's Mortgage Agreement recites, in capital letters, that Buyer agrees to buy the vessel "AS IS", "WHERE IS," "WITH ALL FAULTS." Ex. B, p. 4.

24. §8.f. of the Ships Mortgage Agreement provides "Buyer shall perform due diligence and inspect vessel and additional gear/equipment (if any) subject to this purchase agreement." Ex. B, p. 7.

25. In § 9 of the Ships Mortgage Agreement I Kill Fish LLC warranted that

> a. ....Buyer and/or Buyer's agent inspected the vessel and additional gear/equipment (if any) subject to this agreement to purchase and has found the vessel and additional gear/equipment (if any) to be in acceptable condition for the negotiated purchase price.

Ex. B, p. 8. Mr. Flathman initialed this warranty. Id.

26. On information and belief Mr. Flathman had a full opportunity to inspect the vessel, and in fact did. On information and belief, Mr. Flathman knew and understood that the vessel needed work before the Bristol Bay fishing season. On information and belief, Mr. Flathman in fact began replacing the engines in the vessel before transfer of

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

ownership was fully completed by receipt of confirmation of USCG NVDC recording of the vessel.

27. The Ships Mortgage Agreement was filed with the USCG National Vessel Documentation Center pursuant to 46 U.S.C § 31321 on November 14, 2018. Ex. A, p. 4. The USCG NVDC recorded the mortgage pursuant to 46 U.S.C § 31322 as a preferred mortgage, signifying its substantial compliance with requirements of 46 U.S.C. § 31321 for that purpose. Id. The preferred mortgage was recorded in the amount of the full sale price of the vessel and associated equipment/gear of $130,000. See Ex. A, p.4 ; Exhibit B, ps. 1-2.

28. Initial payments of $30,000 and $10,000 on or about the time of closing were timely made by Mr. Flathman on behalf of I Kill Fish LLC and acknowledged on November 10, 2018 by the broker in § 27 of the Ships Mortgage Agreement. Ex. B, p. 13. The remaining amount of the mortgage accordingly was-- and still is-- $90,000 plus interest.

29. Pursuant to the Ships Mortgage Agreement, two additional annual payments, each in the amount of $48,402.44, were due on October 1, 2019 and October 1, 2020 respectively. See Ex. B, p. 5, Ships Mortgage Agreement at §§ 3.vi and vii. These payments were each to be made "without demand." Ex. B, ps. 5 and 8, at ¶¶ 3.vi, 3.vii, and 8.h.Together these payments due comprise the remaining sale price of $90,000 plus 5% interest for a total of $96,804.08. Ex. B, p. 5 at § 3. xi.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

30. The two remaining payments of $48,402.44 due in 2019 and 2020 respectively were never made.

31. In June of 2018 Mr. Flathman communicated to Mr. Black that approximately 300 fathoms of drift net, out of 800 included in the sale, were missing from their storage place in Naknek. The nets had been used the previous season in the Bay by a lessee of another vessel of Mr. Black's. Mr. Black was not in Bristol Bay at the time and had no direct means to confirm the status of the net, or why or to what extent any amount may have been missing. However, Mr. Black in good faith inquired by phone with businesses and others in Bristol Bay to attempt to locate the net or determine what might have happened, and posted a reward for information about them. This effort was without success.

32. When the first scheduled payment of $44,404.44 was not received in early October, 2019, Mr. Black and the broker of the Ships Mortgage Agreement made efforts to contact Mr. Flathman for more than two weeks to inquire about the payment. Mr. Flathman did not respond and could not be reached.

33. Subsequently, an attorney for I Kill Fish LLC wrote a letter to Mr. Black advancing various unsubstantiated claims about the condition of the F/V Overkill and unsubstantiated alleged effects on Mr. Flathman's fishing season in the Bay.

34. After the sale, on information and belief, and as reflected in CFEC public records in Exhibit D, Mr Flathman fished the F/V Overkill in the State of Alaska Bristol Bay drift net fishery in 2019, 2020, 2021, 2022. See Ex. D, p. 2.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

35. On information and belief, and is further reflected by CFEC public records in Exhibit D, Mr. Flathman is described as the owner of the F/V Overkill beginning in 2020 and in 2022 as owner with another apparent co-owner. Ex. D, p. 1. Any such changes in ownership are not recorded on the USCG NVDC Abstract of Title, and thus presumably were not filed with USCG NVDC. See A at 4.

**COUNT I- Preferred Mortgage Deficiency**

**Claim In Personam for Deficiency in Payment of the Preferred Mortgage Pursuant to 46 USC § 31321(b)(2)(B) Against I Kill Fish LLC**

36. This claim is brought in personam against individual Defendant I Kill Fish LLC pursuant to 46 USC § 31321(b)(2)(B). Plaintiff seeks a finding of "default on any term of the preferred mortgage" and enforcement of the preferred mortgage lien for "the outstanding indebtedness or any deficiency in full payment" of the preferred mortgage. Id. at (b) and (b)(2)(B). The Ships Mortgage Agreement required payments of $46,402,44 in the fall of 2019 and 2020 for a total of $96,804.88. See Ex B, p. 5, at §§ 3.vi, 3.vii, and 3.xi. The payments were never made.

37. There are several terms upon which default has occurred. In addition to the obligation to make the payments in 2019 and 2020 "without demand" as required by § 3.vi and 3.vii., supra, I Kill Fish LLC in § 8.h. further acknowledged that it was "fully and wholly responsible for making the mortgage payments to seller without demand pursuant to the mortgage terms in section 3." Ex. B, ps. 5 and 7. The LLC further "promised" to do so in § 9. b., "BUYER'S WARRANTIES TO SELLER AND

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

PROMISE TO PAY." Ex. B, p. 8. I Kill Fish LLC should be found to be in default of each of these terms of the preferred Mortgage.

38. A further provision in § 3. ix provides " Mortgagee (Seller)shall have the absolute right to repossess, arrest and/or force the sale of the vessel if any scheduled payment is 2 (two) months late." Ex. B, p. 7. This remedy appears to encompass a functional default in so far as repossession and sale could not likely otherwise occur.

39. Defendant also failed to make any mortgage payment at any time for nearly three years and until the present. In the meantime, on information and belief, the F/V Overkill has been utilized by I Kill Fish LLC and/or Mr. Flathman for three seasons of fishing in the Bristol Bay salmon drift net fishery after failing to make payment and while securing income for I Kill Fish LLC and/or its sole member Mr Flathman. See Exhibit D, ps 1 and 2. This failure to make any payment at any time up until the present should be conclusive in itself to establish default on the above terms of the Agreement. Ex. B, ps. 5, 7, and 9, at §§ 3.vi, 3.vii, 3.ix, 8.h , and 9.b.

40. It is also plain that the payment terms above are among the most important terms of the preferred mortgage and duties of the mortgagor to perform. I Kill Fish LLC after initally paying $40,000-- required at closing to secure possession and title to the vessel-- made no further payments on the total sale price of $130,000. The extent of the failure to make the payments should also be conclusive of default on the terms above.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

41. The apparent transfer of ownership of the F/V Overkill I Kill Fish LLC to Mr. Flathman, if in fact this occurred, appears to violate § 3.xiv providing that "Mortgagor shall not use the vessel as collateral for any loans or otherwise encumber the vessel without formal written permission from Mortgagee prior to doing so." Ex. B, p. 5, § 3.xiv. If so, this "shall be considered a breach and Mortgagee shall have the right to repossess and/or force sale of the vessel". Ex. B, p. 5, § 3.iv. Though styled a breach, this is another basis for default if these actions occurred.

42. I Kill Fish LLC therefore is and should be found to be in default of "any term" of the preferred mortgage and— though this not required under § 31325(b)-- the preferred mortgage as a whole.

43. The remaining amount secured by the mortgage here is $90,000. Plaintiff seeks recovery of this amount at minimum. The actual amount of the remaining payments due under the Ships Mortgage Agreement includes agreed upon interest at 5% for a total $96,804.88 had payment been made when due. Ex. B, p. 5, § xi.To the extent permitted under applicable law, Plaintiff will seek to recover the additional amount of $6,804.88 in interest above the remaining amount secured by the preferred mortgage and further interest up to the present.

**COUNT 2- Breach of Contract**

**Claim in Diversity for Breach of Contract and Damages Against Defendants I Kill Fish LLC and Trever Flathman**

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

44. This Count 2 is brought pursuant to diversity jurisdiction against individual Defendants I Kill Fish LLC and Trever Flathman for breach of contract on the Ships Mortgage Agreement. The allegations set forth are in Count 1 and in the Complaint above are incorporated by reference here. As stated above, Plaintiff respectfully submits that the law of the State of Alaska should be applied here.

45. The Agreement, as its full title and provisions confirm, comprises not only a mortgage but an Agreement to Purchase-- a contract-- and a promissory note.[7] The breaches of contract comprise the failure of Defendants to make timely payments as required by the Ships Mortgage Agreement, either at the time due on October 1, 2019 and October 1, 2020; or on "11/1/2019" and "10/31/2020" under the Amortization Schedule appended to Agreement, see Ex. B, p. 11; or by two months after these dates, the time provided under the Agreement at § 3.ix. for Plaintiff's "absolute" right to repossess the F/V Overkill. See Ex. B, p. 5. For the reasons stated above in Count 1, the failure to make the mortgage payments due in 2019 and 2020 at any time comprise both breach of and default on the contract. To the extent I Kill Fish LLC and/or Mr. Flathman transferred ownership and encumbered the vessel, this may comprise a breach of § 3.xiv. Id.

[7] "Ships Mortgage, Promissory Note, Agreement to Purchase, And Earnest Money Agreement For the Fishing Vessel Guns-N- Roses: Official Number 1080607." Id. The parties are referred to throughout not just as Mortgagor and Mortgagee, but Buyer and Seller. See, e.g., id. at § 1 PARTIES."

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

46. This Count 2 seeks monetary damages for these breaches and default. These include the full amount of the initial unpaid deficiency in payment of $96,804.08, plus interest accrued since the failures to make timely payment. This further includes consequential damages to Mr. Black and other contract damages to be determined at trial.

47. These contract damages are sought jointly and severally against both individual defendants I Kill Fish LLC and Mr. Flathman personally. Plaintiff asserts, in this Complaint and as appropriate upon further development of the record, that (1) "the corporate veil" should be "pierced" to make Mr. Flathman personally liable for the actions of I Kill Fish LLC and/or (2) that I Kill Fish LLC is and should be found to be instrumentality and alter ego for Mr. Flathman.

48. The Alaska Supreme Court has held that there are two disjunctive theories and tests for piercing the corporate veil or finding of an "alter ego":

> [T]he corporate form may be disregarded in Alaska under either of two alternate theories. The relation between the theories is disjunctive, not conjunctive ... there are two alternate tests for piercing the corporate veil in Alaska, one dealing with mere instrumentality and the other with misconduct.

Brown v. Knowles, 307 P.3d 915, 929 (Alaska 2013)(citations omitted.) The Court approved the following jury instruction in that case as "a correct statement of the law":

> There are two ways in which a shareholder of a corporation may be liable for any damages assessed against the corporation: one, if the shareholder has used the corporate form to defeat public convenience, justify wrong, commit fraud or defend crime ... or two, if the corporation is the mere instrumentality or alter ego of the shareholder.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

Id. Both tests are met here with respect to Mr. Flathman.[8]

49. Mr Flathman, as both the sole and Managing Member of I Kill Fish LLC, fully controls that business. On information and belief, Mr. Flathman is solely and personally responsible for the wrongful failure of I Kill Fish LLC to make the mortgage payments in this matter, or any part of them, either when due or thereafter. Mr. Flathman signed the Ships Mortgage Agreement as its sole member. Ex. B, p 7, § 8. a. He personally inspected the vessel and began repair or replacement of the engines before the parties recieved USCG documentation recording and closing the transaction. The LLC, although a Nevada business, in the Agreement uses Mr. Flathman's Florida address as its own address. Id. at p.1. Mr. Flathman also utilizes the F/V Overkill as the vessel for his own commercial fishing activities in Bristol Bay, Et D, ps. 1-2. Mr Flathman is stated in these to be the owner of the F/V Overkill, at minimum indicating that he and the LLC are interchangeable. Ex. B, p.1. The instrumentality test is met here, or in the alternative will be on further so on development of the record.

50. The other test for "piercing the veil" -- whether the corporate form is being used to justify wrong-- is also met, or in the alternative, will be met after further

[8] Plaintiff notes that under Alaska law it is likely necessary to plead such a piercing of the corporate veil and/or instrumentality/alter ego claim in the Complaint. See Diamond v. Platinum Jaxx, Inc., 446 P.3d 341 (Alaska 2019)(claim not "adequately raised" when plaintiff "did not plead a piercing the corporate veil theory in his complaint, and ... did not seek to file an amended complaint asserting this claim at any point...") Id. at 345. Plaintiff accordingly now pleads these claims here.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

development of the record. Mr. Flathman wrongfully failed to make the mortgage payments Mr. Black, thereby placing the burden on Mr. Black to bring this action to recover the amounts due. It is also wrongful that, on information and belief, Mr. Flathman has used the F/V Overkill in the Bristol Bay salmon fishery as a means for making substantial personal income for three fishing seasons while failing to direct the LLC to make the mortgage payments due. Further, it is wrongful for I Kill Fish LLC, on information and belief, at Mr. Flathman's direction to have paid only $40,000 dollars at closing, and altogether, of a total purchase price of $130,000 in the Agreement.

**COUNT 3- Unjust Enrichment**

**Claim in Diversity for Equitable Remedy of Unjust Enrichment Against I Kill Fish LLC and Trever Flathman**

51. This claim is brought under diversity jurisdiction against individual defendants I Kill Fish LLC and Trever Flathman for the equitable remedy of unjust enrichment. Once again the allegations set forth above in Counts 1 and 2, and the Complaint as a whole, are incorporated here by reference. These include the allegations set forth above that Mr. Flathman should be jointly liable for all damages and relief. This claim for unjust enrichment further includes any related equitable doctrines which may be applicable or appropriate here.

52. Defendants have breached and defaulted on the Ships Mortgage Agreement contract by failing to make the payments due. Nevertheless, on information and belief,

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

after failing to make the first payment due in fall 2019, Defendants used the fishing vessel F/V Overkill in the remunerative Bristol Bay drift net salmon fishery in 2020. Then, after failing to make the second payment due in fall of 2020, they again used the Overkill in the Bristol Bay salmon fishery in 2021 and 2022. In total, defendants have unjustly enriched themselves by use the vessel for three fishing seasons while wrongfully disregarding their obligation to pay for it. Plaintiff now seeks equitable compensation for the unjust enrichment.

53. The Alaska Supreme Court has stated:

> Unjust enrichment is an equitable doctrine applied only when no other legal remedy exists. "Unjust enrichment is a broad equitable concept .... most closely linked with the law of restitution and implied (quasi) contracts." "Quasi-contracts are not true contracts but are judicially created obligations to do justice." There are three essential elements to a quasi-contract: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable ... to retain it without paying the value thereof." But "the most significant requirement for recovery in quasi-contract is that ... the defendant must receive a true windfall or 'something for nothing.' " If "a defendant has given fair consideration or value to a third party in exchange for the benefits conferred by the plaintiff, there is no windfall and no recovery will lie."

ResQSoft, Inc. v. Protech Sols. , 488 P.3d 979, 989-90 (Alaska 2021); see Alaska Sales and Service, Inc. v. Millet, 735 P.2d 743, 746 (Alaska 1987)."

54. Defendants' behavior fully justifies invocation of the equitable remedy of unjust enrichment. On information and belief, Defendants received a benefit—remunerative use of the F/V Overkill for several years while not paying its mortgage. Mr. Flathman

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

and the LCC, through himself as its owner and Managing Member, must certainly have appreciated the benefit received from not making two payments of $46,402.44 in 2019 and 2020. Their acceptance and retention of that benefit until the present is inequitable. Mr. Black has not received fair consideration for the F/V Overkill, and on information and belief defendants have received a true windfall. In short, "something for nothing" aptly describes the situation here.

55. Contract damages are insufficient here. Even a recovery of all the mortgage deficiency owed would only put plaintiff in the position he should have been had the requirements of the Agreement been honored in timely fashion. Defendants, on the other hand, have had three years of free use of the vessel without substantially paying for it. A further equitable remedy of unjust enrichment is thus necessary here to remedy this otherwise unfair result.

56. A relevant measure of the inequitable benefit retained by defendants is a standard market agreement to lease a vessel for use in an Alaska state permitted salmon fishery. Such leases, as will be shown at trial, are customarily available for a specified amount of money, often $25,000 or a similar amount depending upon the vessel and the fishery, or 25% of the gross, whichever is greater. The Bristol Bay drift net salmon fishery, on information and belief, is in fact known to be among the most profitable of Alaska salmon fisheries. Such a market standard should be applied here to defendants for unjust enrichment for each of the three years they utilized the F/V

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

Overkill in the Bristol Bay salmon fishery without substantially paying for it. This standard, as proven at trial, would be an appropriate market value of the unjust gain.

**COUNT 4- Specific Performance**

**Claim In Diversity for Specific Performance of Contract Remedy of Repossession and Sale Against I Kill Fish LLC and Trever Flathman**

57. This Count is based upon diversity jurisdiction and is brought against Defendants I Kill Fish LLC and Trever Flathman. The factual allegations set forth in this Complaint, including the allegations of breach of contract and default as set forth in Counts 1, 2, and 3 are here realleged and incorporated by reference.

58. The Ships Mortgage Agreement at ¶ 3.ix[9] provides Plaintiff as Mortgagee/Seller an express "absolute right" to repossess, arrest and/or force the sale of the vessel if any scheduled payment is 2 (two) months late. Id., Ex. B, p. 5. This Count 3 seeks specific performance of this contract remedy. This remedy for late payment is not by its terms predicated upon or limited to the remedy of arrest and sale by the federal marshall in admiralty law in rem pursuant to 46 USC § 31325(b)(1). Such an action in rem entails significant procedures, expenses, and jurisdictional requirements, including locating a vessel in the district for arrest. A contract remedy instead is and should be directly enforceable against a party (here both defendants for

[9] The contract at ¶3, § ix. provides: "Mortgagee (Seller) shall have the absolute right to repossess, arrest or force the sale of the vessel if any scheduled payment is more than two months late." Id., Ex. B, p.5.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

reasons stated above.) Plaintiff intends to seek specific performance of the remedy in ¶ 3.ix by means of a determination that I Kill Fish LLC and Mr. Flathman, by failing to make the payments due at any time, have agreed and consented to repossession and sale of the F/V Overkill by Plaintiff.

59. Express authority for remedies to give effect to this contract right are found in 46 U.S.C. § 31325(b)(3).[10] This provision was enacted in 1996, apparently in light of the authoritative decision of Dietrich v. Key Bank, 72 F.3d 1509 (11th Cir.1996) that the Ship Mortgage Act did not prohibit the holder of a preferred ship mortgage from using state law self-help repossession remedies following mortgagor's default where the parties authorized those procedures in the underlying mortgage contract. Id. The new § (b)(3) was intended to "clarify" and confirm such State law remedies[11] which in

---

[10] (b) On default of any term of the preferred mortgage, the mortgagee may-

> (3) enforce the preferred mortgage lien or a claim for the outstanding indebtedness secured by the mortgaged vessel, or both, **by exercising any other remedy (including an extrajudicial remedy) against a documented vessel... or a mortgagor...** for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness, if- **(A) the remedy is allowed under applicable law...**

Id. (emphasis added.)

[11] See H.R. Rep. No. 104-854 at 137: "[T]he Senate bill adds a new paragraph (3) to section 31325(b)… to clarify that the remedies currently available under section 31325(b) do not preclude the exercise of other lawful rights and remedies available to mortgagees, including extrajudicial, "self-help" remedies." Id.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

certain decisions had been found preempted by the existing federal law.[12] The resulting new § 31325(b)(3) expressly preserves additional remedies, including extrajudicial remedies, and other remedies "under applicable law."

60. Such remedies under applicable law may include not only Court rules for attachment but also provisions of the Uniform Commericial Code ("UCC"). The House Committee Report on § 31325(b)(3) specifically recognized UCC rights of possession and sale on default on a lien for a documented vessel.[13] See Dietrich, supra, 72 F.3d at 1512 and Note 7 (finding "both self-help repossession and self-help resale" available under contract and provisions of Florida law"); see Barclays Bank PLC v. Poynter, 710 F.3d 16, 20 (1st Cir. 2013) (upholding sale of vessel in default on preferred mortgage under Florida UCC in federal action under Ship Mortgage Act) ;

---

[12]For example, Bank of America National Trust and Savings Association v. Fogle, 637 F. Supp. 305, 1986 AMC 205 (N.D. Cal. 1985) (holding that in providing for an in rem admiralty remedy in law, Congress must have intended to preclude a "self-help" remedy under state law); cited in H.R. Rep. No. 104-854 at 137.

[13]

> Under the Uniform Commercial Code in effect in almost every state, a secured creditor may take possession of the collateral security for the loan upon a default and sell it in foreclosure of the creditor's lien. For many years, lender's holding preferred mortgages on documented vessels regularly exercised this type of "self-help" remedy to sell mortgaged vessels upon a loan default... there was little likelihood of an adverse maritime lien claim against the vessel, there was no reason to go through the time-consuming, expensive procedures of an action in court.

See H.R. Rep. No. 104-854 at 137.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

see also Peoples Bank v. Bluewater Cruising LLC, No. C12-00939RSL, at *6-7 (W.D. Wash. Jan. 17, 2014).

61. Plaintiff submits that the Alaska UCC- Secured Transaction enacted in 2013 is applicable here pursuant to the contract and 46 USC §31325(b)(3). In brief, the Ships Mortgage Agreement was intended by the parties to create a security interest not only under the Ship Mortgage Act but under the UCC.[14] "[A] security interest is created if the transaction is intended to create a security interest." Brown v. Baker, 688 P.2d 943, 947 (Alaska 1984)(upholding application of the earlier Alaska UCC to a vessel repossession and sale).[15] A new provision of the revised UCC-Secured Transactions Article 9 enacted in 2013 now recognizes security interests created by federal statutes which preempt state filings.[16] See AS 45.29.311(a ). A federal filing of a vessel

[14] § 3. xiii provides for a UCC filing: "Mortgagee.. shall also file a UCC notice of claim of lien." Ex. B, P. 5. However, the filing of the federal preferred mortgage fulfills this purpose pursuant to AS 45.29.311(a) and (c).

[15] The current Alaska UCC maintains the same language construed in Brown in a new section AS § 45.01.211(38).

[16] AS 45.29.311(a) provides: "… [T]he filing of a financing statement is not necessary or effective to perfect a security interest in property subject to **(1)** a statute, regulation, or treaty of the United States whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to the property preempt AS 45.29.310(a)". Id.

preferred mortgage is exactly that, and also establishes a security interest under Article 9 of the Alaska UCC. <u>See</u> AS 45.29.311(c).[17]

62. Alaska UCC- Secured Transactions at Article 9 further provides remedies, both under Chapter 9 and as provided by "agreement of the parties."[18] AS 45.29.601. These include the right to take possession of the collateral after default, either with or without judicial process.[19] AS 45.29.609. In addition, after default a secured party

---

[17] AS 45.29. 311(c) confirms that, except for its duration and renewal, "the security interest [in subsection (a)] is subject to this chapter." <u>Id.</u>

[18] "(a) After default, a secured party has the rights provided in AS 45.29.601 - 45.29.628 and …. those provided by agreement of the parties. " AS 45.29.601.

[19] AS 45.29.609 "Secured party's right to take possession after default" provides in part:

> **a)** After default, a secured party
> **(1)** may take possession of the collateral…
>
> **(b)** A secured party may proceed under subsection (a) of this section
> **(1)** in accordance with judicial process; or
> **(2)** without judicial process if it proceeds without breach of the peace.
>
> **(c)** If so agreed and, in any event, after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party that is reasonably convenient to both parties

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

may sell the collateral pursuant to AS 45.29.610.[20] Other provisions of AS 45.601-628 set forth further procedures for these purposes.

63. Here, "an agreement of the parties," see AS 45.29.601, already exists in § 3.ix. with respect to repossession and sale of the vessel. Ex. B, p. 5. Plaintiff accordingly intends to seek a determination from this Court that Defendants are in default of the Ships Mortgage Agreement, as already asserted above, and that Plaintiff is entitled to specific performance of Defendants' contract agreement to the "absolute right" of repossession and sale of the F/V Overkill. Plaintiff further intends to assert such specific remedies as may be appropriate "under applicable law," including pursuant to the Alaska UCC, and which may available by application to this Court or by agreement or as "self help."

## PRAYER FOR RELIEF

64. Plaintiff respectfully requests this Court to grant relief as set forth above, either cumulatively or where appropriate in the alternative, to include without limitation the following:

a. A finding of default by individual defendants on the terms of the preferred mortgage ;

[20] "**(a)** After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following commercially reasonable preparation or processing." Id.

Id.

Kevin D. Callahan Law LLC
11620 Our Road Anchorage Alaska 99516
kdcallahanlaw@protonmail.com
907-250-2505

1. b. An award of damages to the extent of the deficiency in the preferred mortgage, with such additional interest as may be allowed up to the date of the award;

2. c. Additional damages for breach of contract as may be appropriate;

d. equitable relief for unjust enrichment;

e. Repossession of the vessel pursuant to applicable law, including but not limited to a finding of default and specific performance of defendants' agreement to the contract remedy of §3.ix of the Ships Mortgage Agreement, and other remedies available under applicable law, including court rules and Alaska law;

f. For other damages and equitable relief;

g. For the costs and fees of this action, including attorney's fees as may be available and appropriate.

3. Respectfully submitted this 29th day of September, 2022.

s/ Kevin D. Callahan

Kevin D. Callahan
Alaska Bar #8411103

Admitted to the Bar of the
United States District Court
District of Alaska 1989

Kevin D. Callahan Law LLC
11620 Our Road
Anchorage, Alaska 99516
907-250-2505
kdcallahanlaw@protonmail.com